1

2

3

4

**UNITED STATES DISTRICT COURT FOR THE**

5

**EASTERN DISTRICT OF CALIFORNIA**

6

7

ARTURO GONZALEZ on behalf of himself, all others similarly situated, and on behalf of the general public,

8

Case No.: 1:18-cv-00948-AWI-SKO

9

Plaintiffs,

10

v.

**ORDER GRANTING:**

11

NCI GROUP, INC., dba NCI BUILDING SYSTEMS; and DOES 1-100,

- **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND**

12

13

Defendants.

14

- **MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT PAYMENT**

15

16

(Doc. Nos. 29 and 33)

17

18

19    Named Plaintiff Arturo Gonzalez brings a motion for attorneys' fees, costs and an

20 enhancement payment, Doc. No. 29, and a motion for final approval of class action settlement.

21 Doc. No. 33. The motions are unopposed, see Doc. No. 30, and a final approval hearing was held

22 on January 23, 2023. Doc. Nos. 36 & 37. For the reasons that follow, both motions will be

23 granted.

24                                    **BACKGROUND**

25 **A.    Allegations & Claims**

26    As set forth in the First Amended Complaint ("1AC"), Defendant NCI Group, Inc. ("NCI")

27 manufactures and markets metal building systems and components for the nonresidential

28 construction industry. Doc. No. 17 ¶ 38. Gonzalez was employed by NCI at times relevant to this

1   action as a non-exempt, hourly shipping checker in California. Id. ¶ 26. Gonzalez filed this action

2   in Merced County Superior Court on June 6, 2018, on behalf of himself and others similarly

3   situated, including warehouse workers, industrial workers, shipping clerks and other categories of

4   non-exempt, hourly workers in NCI's employ in California during the four-year period prior to

5   commencement of this action. Doc. No. 1 ¶¶ 2, 4. NCI answered the Complaint on July 11, 2018,

6   id., Ex. B, and removed the case to this Court on diversity grounds under the Class Action

7   Fairness Act ("CAFA") on July 12, 2018. Id. The 1AC was filed on February 3, 2020, pursuant to

8   a stipulated order. Doc. Nos. 15-17.

9        The 1AC alleges eight causes of action under the California Labor Code, California's

10  Unfair Competition Law and the Industrial Welfare Commission's ("IWC") California Wage

11  Orders based primarily on allegations that NCI had a policy and/or practice of failing to pay

12  nonexempt hourly employees for missed break time. Doc. No. 17. For example, Gonzalez

13  contends that NCI failed to provide proper compensation for time spent walking to and from break

14  areas and time spent doffing and donning protective gear prior to and following breaks, in addition

15  to failing to provide proper compensation for breaks that were missed completely. See Doc. No.

16  18 at 18:23- 28.

17       The 1AC proposes a class comprising "[a]ll persons who are employed or have been

18  employed by [NCI] in the State of California as hourly, Non-Exempt employees during the period

19  of the relevant statute of limitations," in addition to alleging various subclasses that are not

20  relevant to the disposition of this motion. Doc. No. 17 ¶ 44.

21  **B.     Procedural History**

22       1.     August 6, 2020 Order on Plaintiff's Motion for Preliminary Approval of Class

23              Action Settlement

24       Gonzalez and NCI reached a settlement agreement ("Settlement Agreement") following

25  mediation that took place on November 19, 2019.[1] Doc. No. 18 at 11:11-14. On February 3, 2020,

26  Gonzalez brought an unopposed motion for an order: (i) granting conditional certification of the

27

28  [1] The Settlement Agreement is set forth in a joint filing captioned Stipulation re: Settlement of Class and
    Representative Action ("Stipulation"). Doc. No. 19.

1  proposed class for settlement purposes; (ii) preliminarily approving the Settlement Agreement;

2  (iii) approving the proposed notice and distribution plan; (iv) appointing a settlement

3  administrator; and (v) setting a final approval hearing. Doc. No. 18 at 2.

4      The Court issued an order denying the motion without prejudice on August 6, 2020. Doc.

5  No. 21. In that order, the Court addressed in detail the requirements for class action certification

6  under Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, as well as the fairness,

7  reasonableness and adequacy of the proposed settlement under Rule 23(e)(2).[2] Id.

8      As to the first issue, the Court found that Rule 23(a)'s numerosity, commonality and

9  typicality requirements had been satisfied, Doc. No. 21 at 8:4-10:8, but that Gonzalez had failed to

10  show that Rule 23(a)'s adequacy requirement had been met because: (i) the proposed settlement

11  did not take account of differences among members of the proposed class "with respect to wage

12  levels, shift lengths or the number of shifts worked per week"; and (ii) Gonzalez and his counsel

13  could have a conflict with the proposed class to the extent other members of the proposed class

14  "worked a larger number of longer shifts at higher wages" than Gonzalez. Id. at 10:15-24.

15      As to the second issue, Gonzalez sought certification under Rule 23(b)(3), which requires a

16  showing that: (1) questions of law or fact common to class members predominate over any

17  questions affecting only individual members; and (2) a class action is superior to other available

18  methods for fairly and efficiently adjudicating the controversy. See Fed.R.Civ.P. 23(b)(3);

19  Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 593 (1997); Doc. No. 21 at 11:20-24. The Court

20  found that Gonzalez had satisfied both requirements. See Doc. No. 21 at 12:3-12:25.

21      The Court summarized its findings under Rules 23(a) and 23(b)(3) as follows:

22      Certification of the Class for settlement purposes appears to be warranted in most
        respects, but the Court is not satisfied that Gonzalez and his counsel adequately
23      represent the interests of all Class Members because the subclasses alleged in the
        1AC imply significant variability in Class Member work histories …. [T]his
24      concern is compounded by the fact that the Settlement Payment methodology
        applied in the Settlement Agreement appears to gloss over factors—including the
25      length of shifts worked, the number of shifts worked, wage levels, whether a Class
        Member's employment with NCI was terminated during the Class Period, and
26      whether a Class Member was employed by NCI in the final year of the Class
        Period—that could have a significant impact on an individual Class Member's

27

28  [2] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

1   potential recovery at trial.

2   Doc. No. 21 at 13:27-14:8. Consequently, the Court declined to certify the proposed class for

3   settlement purposes.

4        As to Rule 23(e)(2), the Court conducted a range-of-reasonableness analysis and tested the

5   proposed settlement against factors identified by the Ninth Circuit in *Hanlon v. Chrysler*

6   *Corporation*, 150 F.3d 1011 (9th Cir. 1998). See Doc. No. 21 at 15:9-21:20; see also Hanlon, 150

7   F.3d at 1026 (calling for assessments of class action settlements to balance " [i] the strength of the

8   plaintiffs' case; [ii] the risk, expense, complexity, and likely duration of further litigation [and] the

9   risk of maintaining class action status throughout the trial; [iii] the amount offered in settlement;

10  [iv] the extent of discovery completed and the stage of the proceedings; [and] [v] the experience

11  and views of counsel ...."). In doing so, the Court found "reason to doubt that the Settlement

12  Payment methodology adequately reflect[ed] the rights and interests of all Class Members," Doc.

13  No. 21 at 21:18-20, and stated as follows:

14
15      The Court cannot certify the Class for settlement purposes or grant preliminary
        approval of the settlement because the Court is not satisfied, based on the record
16      before it, that the interests of all Class Members have been adequately represented
        or taken into account in structuring the settlement. Specifically, it appears to the
17      Court that Class Members who worked a large number of long shifts at high
        straight wages—as well as Class Members whose employment with NCI was
18      terminated during the Class Period and/or who were employed with NCI in the year
        prior to the filing of this lawsuit—may get shorted in the calculation of Settlement
        Payments.

19  Id. at 21:22-28.

20        Based on the foregoing the Court denied the motion without prejudice, stating that the

21  concerns in question "could potentially be addressed through additional facts showing uniformity

22  in the work histories of the putative Class Members, modifications to the Settlement Payment

23  calculation methodology or some other means." Doc. No. 21 at 21:28-22:4.

24        2.    August 8, 2022 Order Granting Plaintiff's Renewed Motion for Preliminary

25              Approval of Class Action Settlement

26        On January 28, 2022, Gonzalez filed a renewed motion—which was also unopposed—for

27  an order: (i) provisionally granting class certification for settlement purposes; (ii) preliminarily

28  approving an amended settlement agreement ("Amended Settlement Agreement"); (iii) approving

4

1  the proposed notice and distribution plan; (iv) appointing a settlement administrator; and (v)

2  scheduling a final approval hearing. Doc. No. 24 at 2.

3        Like the Settlement Agreement, the Amended Settlement Agreement—which is set forth in

4  a joint filing captioned Amended Stipulation re: Settlement of Class and Representative Action

5  ("Amended Stipulation"), Doc. No. 24-2 at 2-42—sought to settle this action on behalf of a single

6  class ("Class") defined as:

7          [A]ll non-exempt current and former employees who worked for [NCI] as hourly
        warehouse workers, industrial workers, shipping checkers, distribution employees,

8          shipping clerks, packers, stackers, loaders, packaging clerks, machine operators,
        receiving clerks, production workers, and all other similarly situated employees in

9          California at any time during the Class Period.

10  Doc. No. 24-2, Part VI, §1.4. The Class Period was defined as the period from June 6, 2014

11  through February 24, 2020, id., Part VI, §1.8, and the proposed class was estimated to comprise

12  approximately 274 current and former NCI employees ("Class Members"). Id., Part VI, §1.4.

13        The Amended Settlement Agreement provides that NCI will pay a Maximum Settlement

14  Amount ("MSA")— "the maximum total that can be paid by [NCI]"—of $600,000. Doc. No. 24-

15  2, Part VI, §1.24. The MSA will cover: (i) settlement payments to Class Members who do not opt

16  out of the settlement ("Settlement Class Members"); (ii) Class Counsel's attorneys' fees in an

17  amount not to exceed $150,000; (iii) Class Counsel's litigation expenses in an amount not to

18  exceed $30,000; (iv) an "enhancement payment" to Gonzalez for services rendered and risk

19  assumed as the Named Plaintiff in an amount not to exceed $5,000; (v) administration fees and

20  expenses to the Settlement Administrator in an amount not to exceed $15,000; and (vi) a payment

21  to the California Labor and Workforce Development Agency ("LWDA") and Settlement Class

22  Members under the Private Attorneys General Act ("PAGA") of $60,000 ($45,000 to the LWDA

23  and $15,000 to Settlement Class Members) ("PAGA Payment"). Id.

24        Under the Amended Settlement Agreement, the Net Settlement Amount ("NSA") is the

25  amount remaining for disbursement to Settlement Class Members after subtracting from the MSA

26  attorneys' fees and litigation expenses, the enhancement payment, settlement administration costs,

27  and the LWDA portion of the PAGA payment. Doc. No. 24-2, Part VI, §1.27. At the time the

28  renewed motion was filed, the estimated NSA was $370,000. Id. at 8:16-17, n.2.

1    In the foregoing respects, the Amended Settlement Agreement is identical to the

2 Settlement Agreement. Compare Doc. No. 24-2 at 10:5-21 to Doc. No. 18-1 at 21:16-22:10.

3 Unlike the Settlement Agreement, however, the Amended Settlement Agreement divides the NSA

4 into three payout funds: (i) the Meal, Rest, and Unpaid Wages Payout Fund, which applies to all

5 Class Members; (ii) the Waiting Time Penalties Payout Fund, which applies to all Class Members

6 who worked for NCI at any time from June 6, 2015 through February 24, 2020 but who are no

7 longer employed by NCI; and (iii) the Wage Statement and PAGA Payout Fund, which applies to

8 all Class Members who worked for NCI from June 6, 2017 through February 24, 2020.[3] Doc. No.

9 24-2, Part VI, §§1.27, 1.4. The total payment to a given Settlement Class Member ("Settlement

10 Payment") is the sum of the amounts the Settlement Class Member is entitled to receive from the

11 three payout funds, id., Part VI, §1.41, which amounts are predicated on the Settlement Class

12 Member's unique work history. Doc. No. 24 at 14:6-7.

13    This new protocol for calculating payments—and additional information showing that the

14 work histories of Class Members are fairly uniform—persuaded the Court that Gonzalez's

15 interests were sufficiently aligned with those of other Class Members for him to serve as the

16 Named Plaintiff in this action and that the interests of Class Members had been "adequately

17 represented … in structuring the settlement." See Doc. No. 21 at 21:22-25. Further, the Court

18 found that the Mara Law Firm—and in particular, David Mara and Jill Vecchi—were adequate

19 counsel for the Class, given their extensive experience litigating class actions and PAGA lawsuits,

20 No. 24-1 at 4:19-25, and that the scope of the proposed release was satisfactory since it did not

21 purport to release claims unrelated to the factual allegations in the 1AC. Doc. No. 24 at 17:2-18:15

22 (citing Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010)). Based on findings such as these,

23 the Court granted preliminary approval of the Amended Settlement Agreement as set forth in the

24 Amended Stipulation and conditional certification of the Class for settlement purposes. Doc. No.

25

---

26 [3] The timeframes for the Waiting Time Penalties Subclass and the Wage Statement and PAGA Subclass reflect the
statutes of limitation applicable to the alleged underlying violations, which differ from those applicable to violations
27 involving meal breaks, rest breaks and unpaid wages. See Doc. No. 24 at 10:24-11:1. Further, the Waiting Time
Penalties Subclass is limited to members of the proposed class who are no longer employed by NCI, since termination
28 of employment is a precondition for recovery of waiting time penalties. See id.

1   28 at 12:19-13:4.

2        Further, the Court ordered one slight modification to the proposed notice, approved the

3   proposed distribution plan, authorized retention of Rust Consulting, Inc. as the Settlement

4   Administrator; and ordered the parties to appear on January 23, 2023 for a final approval hearing.

5   Doc. No. 28 at 13:21-14:7.

6                                   **PLAINTIFF'S MOTIONS**

7        On October 10, 2022, Gonzalez brought an unopposed motion for attorneys' fees, litigation

8   costs and an enhancement payment, Doc. No. 29, and on December 16, 2022, Gonzalez brought

9   an unopposed motion for final approval of class action settlement. Doc. No. 33. The Court will

10  first address the motion for final approval of class action settlement.

11  **I.      Motion for Final Approval of Class Settlement**

12       Gonzalez has filed a declaration from a Settlement Administrator employee with relevant

13  personal knowledge showing that notice has been issued to the Class in the manner required under

14  the preliminary approval order issued by the Court on August 8, 2022. Doc. No. 33-2. Gonzalez

15  now seeks final approval of the Amended Settlement Agreement as set forth in the Amended

16  Stipulation, incorporating the actual litigation expenses for which Class Counsel is seeking

17  reimbursement, the Settlement Administrator's current estimated expenses and the final count of

18  Settlement Class Members. Doc. No. 33.

19       Incorporating Class Counsel's claimed litigation costs and the most recent estimate of the

20  Settlement Administrator's costs and fees, the aggregate disbursement to Settlement Class

21  Members would be calculated by deducting the following from the $600,000 MSA: (1) a $5,000

22  enhancement payment to Gonzalez, as the Named Plaintiff; (2) $150,000 in attorneys' fees for

23  Class Counsel; (3) $9,887.94 in litigation costs for Class Counsel; (4) $15,000 in costs and fees for

24  the Settlement Administrator; and (5) $45,000 to the LWDA for its 75% share of the $60,000

25  PAGA Payment. See Doc. No. 33 at 94-16. After making these deductions, the NSA will be

26  $375,112.06. Doc. No. 33 at 9:4-19; Doc. No. 33-2 ¶ 16. The amounts in each of the three payout

27  funds will be as follows:(i) $298,893.76 for the Meal, Rest, and Unpaid Wages Payout Fund; (ii)

28  $25,207.91 for the Waiting Time Penalties Payout Fund; and (iii) $51,011.29 for the Wage

                                          7

1  Statement ($36,011.29) and PAGA ($15,000.00) Payout Fund. Doc. No. 33-2 ¶ 16. Funds

2  allocated to Settlement Class Members who do not cash or deposit checks issued under the

3  Amended Settlement Agreement will go to the cy pres beneficiary selected by the parties, Legal

4  Aid at Work ("Legal Aid"), which offers legal services and training regarding legal rights to

5  employees. Doc. No. 33 at 12:5-21.

6       It turns out the Class comprised 317 members. Doc. No. 33-2 ¶ 10. As of December 16,

7  2022, the Settlement Administrator had received one written request for exclusion and zero

8  objections to the Amended Settlement Agreement. Id. ¶¶ 13-15. The Court conducted a final

9  fairness hearing on January 23, 2023. See Doc. No. 37. No class member was present at the

10 hearing, and no additional requests for exclusion or objections have been received. Consequently,

11 there are 316 Settlement Class Members. Accordingly, the Amended Settlement is projected to

12 pay each Settlement Class Member an average of approximately $1,187.07. Doc. No. 33-2 ¶ 16.

13 The highest estimated settlement share is approximately $4,835.07. Id.

14      **A.     Legal Standard**

15      "There is a strong judicial policy that favors settlements, particularly where complex class

16 action litigation is concerned." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and

17 internal quotation marks omitted). However, "[t]he claims, issues, or defenses of a certified class

18 may be settled … only with the court's approval," "after a hearing and on a finding that it is fair,

19 reasonable, and adequate." Fed. Civ. P. 23(e). When a settlement is reached by the parties prior to

20 certification of a class, the court must confirm "the propriety of the [class] certification and the

21 fairness of the settlement" to protect the absent class members. Stanton v. Boeing Co., 327 F.3d

22 938, 952 (9th Cir. 2003); see In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th

23 Cir. 2011) (When settlements are reached prior to certification "an even higher level of scrutiny"

24 is required to determine the fairness of the agreement.); In re Mego Fin. Corp. Sec. Litig., 213

25 F.3d 454, 458 (9th Cir. 2000) (same).

26      Class settlement under Rule 23 generally proceeds in two phases. In the first phase, the

27 court conditionally certifies the class, conducts a preliminary determination of the fairness of the

28 settlement, and approves the notice to be imparted upon the class. Ontiveros v. Zamora, 303

8

1   F.R.D. 356, 363 (E.D. Cal. 2014). In the second phase, the court holds a fairness hearing where

2   class members may present objections to class certification or to the fairness of the settlement

3   agreement. <u>Ontiveros</u>, 303 F.R.D. at 363 (citing <u>Diaz v. Trust Territory of Pac. Islands</u>, 876 F.2d

4   1401, 1408 (9th Cir. 1989)). Following the fairness hearing, taking into account all of the

5   information before the court, the court must confirm that class certification is appropriate and the

6   settlement is fair, reasonable, and adequate such that the parties should be allowed to settle the

7   class action pursuant to the terms of the settlement agreement. <u>See</u> <u>Valdez v. Neil Jones Food Co.</u>,

8   2015 WL 6697926, at *4 (E.D. Cal. Nov. 2, 2015); <u>Miller v. CEVA Logistics USA, Inc.</u>, 2015

9   WL 4730176, *3 (E.D. Cal. Aug. 10, 2015).

10   **B.      Discussion**

11          The Court conducted analyses as to conditional certification of the Class and the adequacy

12   of notice under Rule 23(a) and Rule 23(b)(3) in the August 6, 2020 order on Plaintiff's motion for

13   preliminary approval of class action settlement and the August 8, 2022 order granting Plaintiff's

14   renewed motion for preliminary approval of class action settlement, Doc. No. 21 at 7:17-14:8;

15   Doc. No. 28 at 9:18-11:24, in addition to conducting a range-of-reasonableness analysis and a

16   *Hanlon* analysis addressing settlement requirements under Rule 23(e). Doc. No. 21 at 14:10-

17   21:20.

18          As noted above, no members of the Class appeared at the January 23, 2023 final approval

19   hearing; no members of the Class have objected to the Amended Settlement; and only one member

20   of the Class has opted out of the Amended Settlement. Class Counsel is seeking less than a third of

21   the $30,000 in litigation costs for which the Court granted preliminary approval. The fees and

22   costs sought by the Settlement Administrator do not exceed the approved amount. And the record

23   shows that the Settlement Administrator executed the notice plan as approved by the Court.

24          Reviewing relevant facts for a third time, the Court again finds that Rule 23(a)'s

25   numerosity, commonality, and typicality requirements have been satisfied, because the Class

26   exceeds 300 Members; all claims are based on the allegation that NCI had company-wide policies

27   and practices in effect during the Class Period that unlawfully deprived Class Members of break

28   time and related compensation; and Gonzalez alleges that he personally suffered all of the harms

1   alleged in the 1AC. See Doc. No. 21 at 8:3-10:8. Further, the Court finds that Rule 23(a)'s

2   adequacy requirement is satisfied because Gonzalez has shown that his work history is consistent

3   with the fairly uniform work histories of other Class Members; Gonzalez has proposed a method

4   of calculating awards that adequately accounts for work history variations that do exist among

5   Class Members; and David Mara and Jill Vecchi of the Mara Firm have a long track record of

6   successfully litigating wage-and-hour class actions such as this. See Doc. No. 28 at 9:18-11:5.

7          In addition to the foregoing, the Court again finds under Rule 23(b)(3) that questions of

8   law and fact common to class members predominate, since all claims in the 1AC are predicated on

9   NCI's company-wide policies and practices with respect to rest and meal breaks, and that the

10   superiority requirement is satisfied, given, in particular, the small amount of potential individual

11   recovery relative to the likely cost of individualized litigation. Doc. No. 21 at 11:18-13:25.

12          Similarly, the Court finds that distribution of the Class Notice conformed to the Court's

13   August 8, 2022 order granting Gonzalez's renewed motion for preliminary approval of class action

14   settlement; that it was the best notice practicable; that it satisfied due process; and that it provided

15   the Court with a sound basis to make an informed decision as to views of Class Members with

16   respect to the Amended Settlement. Doc. No. 33 at 14:19-15:9; see also Doc. No. 28 11:6-24 &

17   n.8. For example, the Settlement Administrator has provided a declaration showing that, in

18   addition to setting up a toll-free telephone number and website with comprehensive information

19   regarding this action and the Amended Settlement, it mailed the approved Class Notice to 317

20   Class Members by September 7, 2022; that only 8 Class Notices were undeliverable; and that no

21   objections and only one request for exclusion had been received as of December 16, 2022. Doc.

22   No. 33-2 ¶¶ 11-15.

23          The Court also finds that the payment of $45,000 (75% of $60,000) to the LWDA for its

24   share of the applicable penalties claimed under PAGA is reasonable under the circumstances,

25   since the record shows that the parties negotiated a good faith amount without compromising the

26   claims or recovery of Class Members and that Plaintiff did not receive a response or objection to

27   the settlement from the LWDA. See Doc. No. 33 at 26:3-9.

28          Finally, the Court again finds that the scope of the proposed release is proper, since it is

1  limited to claims arising from facts alleged in the 1AC and that the Amended Settlement is "fair,

2  reasonable and adequate" under Rule 23(e) for the reasons set forth in the Court's August 6, 2020

3  order denying preliminary approval without prejudice and the Court's August 8, 2022 order

4  granting the renewed motion for preliminary approval of class action settlement—noting, in

5  particular, that the revised methodology for calculating payments approved in the August 8, 2022

6  order adequately addresses potential disparities in the wages, work histories and employment

7  status of Class Members. See Doc. No. 28 at 4:25-6:5, 9:18-11:5; see also Doc. No. 21 at 14:10-

8  21:20 (addressing *Hanlon* factors and range-of-reasonableness analysis).

9       **C.     Conclusion as to Certification of Class for Settlement and Approval of**

10              **Settlement**

11       For the foregoing reasons, the Court will certify the Class, as defined, for settlement

12  purposes and grant final approval the Amended Settlement. Further, the Court will approve the

13  requested Settlement Administration Fee and the PAGA payment.

14  **II.    Motion for Attorneys' Fees, Litigation Costs and an Enhancement Award**

15       Gonzalez brings a motion for attorneys' fees in the amount of $150,000; litigation costs in

16  the amount of $9,887.94; and an enhancement payment in the amount of $5,000. Doc. No. 29 at

17  7:4-7. The motion will be granted for the reasons set forth below.

18       **A.     Attorneys' Fees**

19       Rule 23(h) permits the court to "award reasonable attorney's fees and nontaxable costs" in

20  a class action when they "are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h).

21  Even if the parties agree on the amount of a fee award, a district court has an obligation to

22  consider the fee award in the context of the settlement agreement to ensure that it is reasonable.

23  See In Re Bluetooth, 654 F.3d at 941. Where the settlement agreement creates a common fund, a

24  "district court 'has the discretion to apply either the lodestar method or the percentage-of-the-fund

25  method in calculating the fee award.' " Stetson v. Grissom, 821 F.3d 1157, 1165 (9th Cir. May 11,

26  2016) (quoting Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1006 (9th Cir. 2002)).

27  Despite the discretion afforded to the court, the Ninth Circuit has "encouraged courts to guard

28  against an unreasonable result by cross-checking" the percentage-of-the fund method with the

1   lodestar method. In Re Bluetooth, 654 F.3d at 944–945.

2        Here, as noted above, the gross fund is $600,000 and the requested fees are $150,000. Doc.

3   No. 29 at 7:7:4-7. Thus, the requested fees comprise 25% of the gross fund, which is squarely in

4   line with the benchmark for the Ninth Circuit. See Stetson, 821 F.3d at 1165 ("the 'benchmark'

5   award is 25 percent of the fund"); In re Bluetooth, 654 F.3d at 944-45 (similar); Staton, 327 F. 3d

6   at 952 ("This circuit has established 25% of the common fund as a benchmark award for attorney

7   fees.").

8        The lodestar, which the Court will apply as a cross-check to the percentage-of-the-fund

9   method, is calculated by multiplying the number of hours reasonably expended on litigation by a

10   reasonable hourly rate. Gonzales v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013). The

11   district court must then determine to what extent, if any, a risk multiplier is warranted. See

12   Stetson, 821 F.3d at 1166. The Ninth Circuit has observed that "[r]isk multipliers incentivize

13   attorneys to represent class clients, who might otherwise be denied access to counsel, on a

14   contingency basis," Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 741 (9th Cir. 2016), and that

15   failure to apply a multiplier—or "risk enhancement"—to "risky" cases can be an abuse of

16   discretion. Stetson, 821 F.3d at 1166.

17        Class Counsel provides a billing report showing that, as of October 10, 2022, they had

18   worked 276 hours on this case (with work remaining to secure final settlement approval), which

19   comes to $192,800 in attorney time applying Class Counsel's stated billing rates. Doc. No. 29, Ex.

20   1 ¶ 25.

21        This has not been an especially complex or protracted action, but it has involved the filing

22   of two pleadings, two motions for preliminary approval of class action settlement, a final approval

23   motion and the instant motion for approval of attorney fees, litigation costs and an enhancement

24   payment. Doc. Nos. 1, 17, 18, 24 & 29. Further, Class Counsel sets forth a declaration showing

25   that this action has involved a fair amount of other work, including pre-filing investigation and

26   legal research; drafting and reviewing documents relating to initial disclosures and other aspects of

27   discovery; preparing for and participating in mediation; and drafting a settlement agreement and

28   amended settlement agreement. Doc. No. 29-1 ¶ 17. Taking this—and other work described in

1  Class Counsel's declaration—into consideration, the Court finds that 276 hours of work is

2  reasonable for these proceedings.

3       As to billing rates, David Mara, who has approximately 18 years of experience, billed 164

4  hours at a rate of $800 per hour and Jill Vecchi, who has approximately eight years of experience,

5  billed 112 hours at a rate of $550 per hour. Doc. No. 29-2 at 2. These rates are higher than

6  prevailing rates in the Fresno Division of the Eastern District of California and must, therefore be

7  adjusted for purposes of the lodestar calculation. See Avila v. Cold Spring Granite Co., 2018 WL

8  400315, at *10 (E.D. Cal. Jan. 12, 2018). In *Avila v. Cold Spring Granite Company*, for example,

9  this Court essentially allowed rates of $400 per hour for attorneys with 20 years or more of

10  experience; $350 per hour for an attorney with approximately 10 years of experience; and $250

11  per hour for an attorney with approximately five years of experience. 2018 WL 400315, at *10-

12  *11; see also Kutzman v. Derrel's Mini Storage, Inc, 2020 WL 5909151, at *12 (E.D. Cal. Oct. 6,

13  2020) (applying *Avila* rates in calculating class action lodestar).

14       Allowing an hourly rate of $400 per hour for Mara and an hourly rate of $350 per hour for

15  Vecchi, the value of attorney time through October 10, 2022 would come to a lodestar of

16  $105,000, which implies a risk multiplier of approximately 1.43 to get to the requested $150,000

17  in fees. This case was taken on a contingency basis, so that risk multiplier is reasonable—and even

18  modest—in comparison to cases in this Circuit allowing lodestar multipliers in the 2-to-4 range to

19  compensate counsel for the risk of contingent class action litigation.  See, e.g., Vizcaino v.

20  Microsoft Corp., 290 F.3d 1043, 1050-51 (9th Cir. 2002) (observing that multipliers range from

21  1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0, and affirming district court's

22  conclusion that fee award of 3.65 times lodestar amount was reasonable); see also In re Prudential

23  Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples

24  ranging from one to four are frequently awarded in common fund cases when the lodestar method

25  is applied." (citation omitted)). Further, although there is no showing to this effect on the record,

26  hourly rates for attorneys in the Fresno Division have presumably increased somewhat in the five

27  years or so since *Avila* was decided. The lodestar analysis therefore validates the requested fees.

28       In sum, the ratio of requested attorney fees to the gross fund is squarely in line with Ninth

1   Circuit precedent and the lodestar implies a risk multiplier that is appropriate—and even

2   conservative—in a contingency case like this. The Court therefore finds that the requested

3   attorneys' fees are reasonable.

**B.      Litigation Costs**

5           "[A]n attorney who has created a common fund for the benefit of the class is entitled to

6   reimbursement of reasonable litigation expenses from that fund." Norris v. Mazzola, 2017 WL

7   6493091, at *14 (N.D. Cal. Dec. 19, 2017) (citation and internal quotation marks omitted); accord

8   Smith v. Am. Greetings Corp., 2016 WL 2909429, at *9 (N.D. Cal. May 19, 2016) ("An attorney

9   is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that

10  would normally be charged to a fee paying client.' ") (quoting Harris v. Marhoefer, 24 F.3d 16, 19

11  (9th Cir. 1994)). Such expenses commonly include postage, investigation costs, copying costs,

12  hotel bills, meals, messenger services, court costs, electronic research, court reporter costs,

13  delivery fees, and mediation expenses. See, e.g., Ruiz v. XPO Last Mile, Inc., 2017 WL 6513962,

14  at *8 (S.D. Cal. Dec. 20, 2017); Leverage v. Traeger Pellet Grills, LLC, 2017 WL 6405619, at *7

15  (N.D. Cal. Dec. 15, 2017).

16          Class Counsel requests reimbursement in the sum of $9,887.94 and provides a cost

17  summary showing that, of that amount, $9,572.25 was for court fees and mediation. Doc. No. 29-2

18  at 2-7. Particularly given the Court's interest in promoting settlement through mediation, it is

19  impossible to take issue with these modest expenses, which are less than a third of the amount for

20  which the Court granted preliminary approval. The request for $9,887.94 in litigation costs will

21  therefore be granted.

**C.      Enhancement Award**

23          Representative service awards—also known as "enhancement awards"—are "fairly typical

24  in class action cases." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–959 (9th Cir. 2009);

25  Staton, 327 F.3d at 977. Granting a service award is discretionary and in doing so, the court should

26  consider the time and effort expended by a named plaintiff and the risk undertaken in serving as a

27  named plaintiff. Staton, 327 F.3d at 977; In re Mego, 213 F.3d at 463. Incentive awards are

28  particularly appropriate in wage-and-hour actions where a plaintiff undertakes significant

1  "reputational risk" by bringing suit against a present or former employers. <u>Rodriguez</u>, 563 F.3d at

2  958–59.

3        Gonzalez seeks an enhancement award in the amount of $5,000 as the Named Plaintiff in

4  this case. Doc. No. 29 at 14:1-2. Courts routinely find rewards in the amount of $5,000 to be

5  reasonable. Doc. No. 36 at 21:28-23:4; <u>see</u> <u>Richardson v. THD At-Home Servs., Inc.</u>, 2016 WL

6  1366952, at *13 (E.D. Cal. Apr. 6, 2016); <u>see also</u>, <u>Harris v. Vector Marketing Corp.</u>, 2012 WL

7  381202, at *7 (N.D. Cal. Feb. 6, 2012) (stating that courts have indicated "as a general matter,

8  $5,000 is a reasonable amount"); <u>Hopson v. Hanesbrands Inc.</u>, 2009 WL 928133, at *10 (N.D.

9  Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are

10  reasonable."). Gonzalez sets forth a declaration stating that since filing this lawsuit nearly five

11  years ago, he has engaged in regular communication with Class Counsel and assisted in crafting

12  discovery, responding to discovery and otherwise developing facts underlying the claims in this

13  case. Doc. No. 29-6 ¶¶ 4-6. Further, the Court notes that Gonzalez stands to receive only $204.08

14  in settlement (compared to an average settlement payment in excess of $1,000), Doc. No. 29 at

15  14:7-11, and that he is the sole named plaintiff in this action. <u>See</u> <u>In re Online DVD-Rental</u>

16  <u>Antitrust Litig.</u>, 779 F.3d 934, 947 (9th Cir. 2015) (taking note of the number of named plaintiffs

17  in assessing service award).

18        The Court therefore finds that the requested enhancement award of $5,000 is reasonable.

19  <u>See</u> <u>Richardson</u>, 2016 WL 1366952 at *13.

20        **D.     Conclusion as to Attorneys' Fees, Litigation Costs and Enhancement Award**

21        For the foregoing reasons, the Court will grant Plaintiff's motion for attorneys' fees,

22  litigation costs and an enhancement award. Doc. No. 29.

23                                        **ORDER**

24        Accordingly, IT IS HEREBY ORDERED that:

25        1.  Plaintiff Arturo Gonzalez's motion for final approval of class settlement (Doc. No.

26            33) is GRANTED;

27        2.  The Class meets the requirements for class certification for purposes of settlement

28

15

set forth in Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

3.  The terms of the Amended Settlement Agreement are fair, reasonable and adequate and comply with Rule 23(e) of the Federal Rules of Civil Procedure;

4.  The notice provided to members of the Class, as well as the means by which it was provided, constitutes the best notice practicable under the circumstances and is in full compliance with the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure;

5.  The PAGA payment of $45,000 (75% of $60,000) to the LWDA is approved, with the remaining $15,000 to be distributed in accordance with the Amended Settlement Agreement;

6.  The Settlement Administrator, Rust Consulting, Inc., is awarded up to $15,000 for settlement administration costs.

Further, IT IS ORDERED THAT:

1.  Plaintiff's motion for attorneys' fees, costs and an enhancement award (Doc. No. 29) is GRANTED;

2.  The Mara Firm is appointed as class counsel and awarded $150,000 in attorneys' fees and $9,887.94 in litigation costs;

3.  Plaintiff Arturo Gonzalez is awarded an enhancement award for his service as the sole Named Plaintiff in the amount of $5,000;

Further, IT IS ORDERED THAT:

1.  The Court directs the parties to effectuate the Amended Settlement Agreement and directs the Settlement Administrator to calculate and pay the claims of Class Members in accordance with the terms set forth in the Amended Settlement Agreement and incorporating the amounts awarded in this order for attorneys' fees, litigation costs, settlement administration costs and the enhancement award;

1     2. By means of this order, this Court enters final judgment in this action;

2     3. Each side shall bear its own costs and attorneys' fees except as provided by the

3         Amended Settlement and this order;

4

5     4. The Clerk of Court shall CLOSE this case; and

6     5. The Court RETAINS jurisdiction to consider all further applications arising out of

7         or in connection with the settlement.

8

9  IT IS SO ORDERED.

10  Dated:  January 24, 2023

                                                    SENIOR  DISTRICT  JUDGE

17